**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| EPHRAIM ETOKIE,<br><br>        Plaintiff<br><br>    v.<br><br>ARNE DUNCAN, Secretary of the United<br>States Department of Education,<br><br>        Defendant | Civil Action No. 15-602 (CKK) |

**MEMORANDUM OPINION**
(July 29, 2016)

Plaintiff Ephraim Etokie claims that he was the victim of discrimination when he was not

hired for an Equal Employment Opportunity Specialist position at the United States Department

of Education in March, 2009. Plaintiff is a Nigerian-American man born in 1951 who has a

hearing disability, deafness. In this case, he claims that Defendant discriminated against him on

the basis of disability, age, national origin, and gender, bringing claims under the Rehabilitation

Act, the Age Discrimination in Employment Act, and Title VII of the Civil Rights Act of 1964, as

amended.[1] In addition, he brings claims in tort for intentional infliction of emotional distress and

for tortious interference with prospective advantage. Before the Court are Plaintiff's [14] Motion

for Summary Judgment, and Defendant's [19] Cross Motion to Dismiss and for Summary

Judgment. Plaintiff moves for summary judgment on all claims in this action on the basis of the

record as it currently is constituted. In turn, Defendant seeks dismissal of the tort claims under

---

[1] The Court notes, as did Defendant, that it is far from clear that Plaintiff has adequately pleaded
his national origin and sex discrimination claims—or that he continues to pursue these claims in
his briefing on the cross-motions for summary judgment. *See* Def.'s Opp'n to Pl.'s Mot. for
Summary Judgment and Cross-Mot. for Summary Judgment, ECF No. 19, at 8 n.2  That said, in
light of Plaintiff's pro se status, the Court will presume for the purposes of this motion—as does
Defendant—that these claims are adequately pled and addresses them on the merits.

Federal Rule of Civil Procedure 12(b)(1) for want of subject matter jurisdiction and seeks summary judgment on each of the discrimination claims. Upon consideration of the pleadings,[2] the relevant legal authorities, and the record for purposes of this motion, the Court DENIES Plaintiff's [15] Motion for Summary Judgment and GRANTS Defendant's [19] Motion to Dismiss and for Summary Judgment. The Court dismisses the tort claims under Rule 12(b)(1) because of Plaintiff's failure to exhaust his administrative remedies. With respect to the discrimination claims, the Court concludes that Plaintiff has not presented evidence from which a reasonable jury could infer discrimination, let alone undisputed facts that would merit granting summary judgment to Plaintiff on this record. Therefore, the Court grants summary judgment to Defendant on each of the discrimination claims. This case is dismissed in its entirety.

## I. BACKGROUND

On approximately January 14, 2009, the Department of Education posted an announcement for a single Equal Employment Opportunity ("EEO") Specialist position, labeled as GS-260-11/12. Def.'s Mot., Ex. 3 (VA 0024), at Record of Investigation ("ROI") 74; *id.*, Ex.4 (VA 0028), at ROI 184. The position was posted under two separate vacancy announcements: OM-2009-0024, known as VA 0024, and OM-2009-0028, known as VA 0028. *Id.* VA 0024 was

---

[2] The Court's consideration has focused on the following documents:

- Pl.'s Mot. for Summary Judgment ("Pl.'s Mot."), ECF No. 14;
- Def.'s Opp'n to Pl.'s Mot. and Cross Mot. to Dismiss and for Summary Judgment ("Def.'s Cross-Mot."), ECF No. 19;
- Pl.'s Reply in Supp. of his Mot. for Summary Judgment and his Opp'n to Def.'s Cross-Mot. for Summary Judgment ("Pl.'s Reply"), ECF No. 25; and
- Def.'s Reply to Pl.'s Opp'n to Def.'s Cross-Motion for Summary Judgment ("Def.'s Reply"), ECF No. 28.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

open to all United States citizens through the federal government's competitive hiring process.

VA 0024, at ROI 74. VA 0028 was open only to then-current federal employees and others who

were exempted from the competitive hiring process. VA 0028, at 184. Each of the two vacancy

announcements was open to applications at the GS-11 level and at the GS-12 level. *See* VA 0024,

at ROI 84-85; VA 0028, at ROI 196. Applications for this position were submitted through the

federal government's Internet hiring portal, USAJOBS.gov. VA 0024, at ROI 77; VA 0028, at

ROI 187. The application consisted of questions chosen by the selecting official for the position

from a "library" of questions maintained in the Department of Education's hiring system, ED

HIRES. Def.'s Mot., Ex. 6, EEOC Hearing Transcript – Testimony of Nichelle Bowman

("Bowman Test."), 60:15-61:16. After an applicant submits an application, the ED HIRES

system automatically scores the application based on the answers included in the application. *Id.*,

64:18-65:5, 80:18-81:19; *see also* Pl.'s Mot., Ex. E ("Pl.'s Applicant Data Report) (showing

application data with scores associated with responses to individual questions), at ROI 244-62.

The highest score possible, before any veteran's preferences are applied, is 100. Bowman Test. at

82:5-83:10. Following the automated scoring process, a human resources specialist reviewed

each applicant's resume to ensure that it matched the responses to the vacancy announcement

and to determine whether or not the applicant was qualified for the position in question. Bowman

Test., 65:5-13. For the announcements labeled VA 0024 and VA 0028, human resources specialist

Nichelle Bowman completed these tasks. Def.'s Mot., Ex. 5 ("Bowman Aff."), at 2.

 The next step in the process is that certificates are prepared under each vacancy

announcement with the names and identifying information of one or more candidates, and that

information is forwarded to the selecting official for review. *See* Bowman Test. at 66:3-68:9. Any

person that is on one of the certificates is eligible to receive an interview. *Id.* at 68:20-69:8.

However, the process of preparing the certificates differs for the two vacancy announcements—VA 0024, which is open to all applicants under the agency's competitive process, and VA 0028, which is open only to then-current federal employees and to people exempted from the competitive hiring process.

With respect to VA 0024, a Delegated Examining Unit ("DEU") certificate is prepared for each of the grade levels applicable to the vacancy announcement, here GS-11 and GS-12. *See* Def.'s Mot., Ex. 7, at ROI 182. For each grade level, the qualified applicants, as determined by a human resources specialist as described above, were ranked according to the sum of the automated ED HIRES scores plus any qualifying veteran's preference points. *Id.* at 4. Specifically, ten points are added to an applicant's ED HIRES score for a veteran's preference. Bowman Test., 74:8-14. At that time, it was the Department's practice under the "Rule of Three" to put the top three scoring candidates for each grade—adjusted for the veteran's preference—on a DEU certificate, ranked by the preference-adjusted score. *Id.*, 65:14-67-18; *see also* 5 C.F.R. § 332.404 ("An appointing officer, with sole regard to merit and fitness, shall select an eligible … from the highest three eligibles on the certificate who are available for appointment"). For VA 0024, the GS-11 DEU listed three candidates, in the following order:

- Darrell Davis, with an adjusted score of 108.61;

- Nanese Loza, with an adjusted score of 102.92; and

- Plaintiff Ephraim Etokie, with an adjusted score of 100.

Def.'s MSJ, Ex. 7, at ROI 182. Of those candidates, Davis and Loza received a veteran's preference, and Plaintiff did not. *See* Bowman Test. at 67:22-68:2. For VA 0024, the GS-12 DEU also listed three candidates, in the following order:

- Darrell Davis, with an adjusted score of 108.61;

- Jennifer Myers, with an adjusted score of 105; and

- Dawn Pierce, with an adjusted score of 104.65.

Def.'s MSJ, Ex. 8, at ROI 181A. Each of these three candidates received a veteran's preference. *See id.* (listing veteran's preference indicator "CPS" or "TP" next to all candidates); Bowman Test. (explaining veteran's preference indicators); *see also* Office of Personnel Management, Veterans Employment Initiative: Vet Guide, available at

https://www.opm.gov/policy-data-oversight/veterans-employment-initiative/vet-guide/ (last visited July 22, 2016) (explaining veteran's preferences and the indicators "TP" and "CPS"). Under the Rule of Three, if a selection was made from a DEU certificate, the selecting official was required to select a candidate from among the top three candidates and was prohibited from choosing a *non-veteran* over a *veteran* with a higher score. *See* Bowman Test. at 67:11-18; 5 U.S.C. § 3318; 5 C.F.R. § 332.402-406.

Under VA 0028, Bowman prepared three types of certificates for both GS-11 and GS-12: a merit promotion certificate; a noncompetitive certificate; and a Schedule A certificate. *See* Def.'s Mot., Exs. 9-14, ROI 397-402. Individuals are eligible for listing on a Schedule A certificate if they have a certified mental or physical disability or satisfy other eligibility criteria. *See* Bowman Aff., at ROI 55; *see also* 5 C.F.R. § 213.3101 (regulatory authorization for Schedule A hiring). All qualifying applicants who received at least an ED HIRES scores of 85 were listed on each of these certificates. *See* Bowman Test. at 65:14-19; *see also, e.g.*, Def.'s Mot., Ex. 12, at ROI 401 (listing five candidates on VA 0028 noncompetitive certificate for GS-12). The individuals on each of those certificates are listed in alphabetical order, by last name, and their ED HIRES scores are not printed on those certificates. Bowman Aff., at ROI 55; *see also* Def.'s Mot., Exs. 9-14, ROI 397-402. Plaintiff was one of two candidates listed on the Schedule A certificates for both GS-11

and GS-12. *See* Def.'s Mot., Ex. 13, at ROI 399; *id.*, Ex. 14, at ROI 402. Plaintiff was not listed on

any of the other VA 0028 certificates. *See id.*, Exs. 9-12, ROI 397-98, 400-01. According to the

agency's practice, listing on one of the certificates means that the candidate was *eligible* to be

interviewed, but not that the candidate necessarily would be invited to interview or necessarily would

be offered a job. Bowman Test. at 68:10-69:17, 99:16-100:1.

 Altogether the eight certificates prepared for the two vacancy announcements were

forwarded to the selecting official, Dr. Larry Ross, director of the agency's Equal Employment

Opportunity Services office, via the Department's Office of Management. *See* Bowman Test. at

66:12-20; Def.'s Mot., Ex. 15 ("Ross Aff."), at ROI 47. Dr. Ross delegated the responsibility for

setting up the interview panel and for recommending a candidate to Chandra Vickers, the branch

chief of the agency's Equal Employment Opportunity Services office. Ross Aff. at ROI 47;

Def.'s Mot., Ex. 16, EEOC Hearing Transcript – Testimony of Chandra Vickers ("Vickers

Test."), at 165:20-22. Vickers reviewed all eight certificates that were transmitted from the

human resources offices. *See* Vickers Test. at 169:20-22; Bowman Test. at 66:12-20. Based on

this review, and in light of the qualifications for the position, Vickers determined which

applicants would receive an interview. Vickers Test. at 169:14-170:22. She then established a

panel that would interview those applicants. *Id.* at 170:22-171:3. The following individuals were

interviewed based on the certificates transmitted to Vickers:

- Jennifer Myers, listed on the GS-11 DEU certificate for VA 0024;

- Nanese Loza, listed on the GS-12 DEU certificate for VA 0024;

- Michael Jones, listed on the GS-11 and GS-12 merit promotion certificates for VA 0028;

- Leutishia Stills, listed on the GS-11 and GS-12 noncompetitive certificates for VA 0028;

- Debra Brown, listed on the GS-12 noncompetitive certificate for VA 0028; and
- Dwan Buford, listed on the GS-12 noncompetitive certificate for VA 0028.

Def.'s Mot., Exs. 7-14 at ROI 181A, 182, 397-402; *see* Bowman Test. at 90:14-22 (explaining that the notation "NI/NS" on a certificate indicates that a candidate was not interviewed and not selected). Based on a review of Plaintiff's resume, Vickers determined that he did not have recent or relevant experience and observed inaccuracies in his resume. Vickers Test. at 178:17-180:16. Because Vickers concluded that Plaintiff's skills and experience did not match the needs of the position, he was not among those selected for an interview. *See id.* By contrast, Vickers determined that Loza, who was ultimately selected, had relevant experience and chose to interview her. Vickers Test. at 172:8-13.[3]

Based on the interviews that the panel conducted, it concluded that Loza was the preferred candidate, and the panel recommended her to Dr. Ross. Ross Test. at 107:17-108:2. Loza was the only individual whom Dr. Ross interviewed. *Id.* at 108:3-6. Consistent with his practice of delegating review of resumes to the immediate supervisor, here Vickers, and the interviewing panel, he did not review Loza's resume before interviewing her and did not review the resumes of any other applicants. *Id.* at 108:7-22. Dr. Ross approved the recommendation of Vickers and the panel to hire Loza. Ross. Aff. at ROI 47. Subsequently, he testified that, if he had been aware of Plaintiff's application at the time of the selection process, he would not have approved a recommendation of Plaintiff for the position because Plaintiff did not have federal Equal Employment Opportunity counseling experience. Ross Test. at 114:3-12.

---

[3] The Court reserves further presentation of the specific background of Plaintiff and of the individual selected for the position for the discussion of the parties' arguments below.

On March 12, 2009, Plaintiff received several e-mail communications from Bowman, the

human resources specialist. Specifically, at 9:40 a.m., Bowman sent an e-mail to both Plaintiff

and applicant Darrell Davis with the following message:

> This is to notify you that the position of Equal Information: Employment
> Opportunity Specialist GS-260-12, OM-2009-0024 with the U.S. Department of
> Education (ED) has been cancelled. Thank you for your interest in employment
> with ED, and we wish you success in your future employment endeavors. Thank
> you, Nichelle Bowman Human Resources Specialist.

Def.'s Mot., Ex. 19; *see also id.*, Ex. 21. An hour and a half later, at approximately 11:08 a.m.,

Bowman sent a follow-up e-mail to both Plaintiff and Davis with the following message:

> Please disregard the previous email. See below. Thank you for your interest in the
> position Equal Employment Opportunity Specialist GS-260-11/12, OM-2009-
> 0024 with the U.S. Department of Education (ED). You were among the best
> qualified candidates referred to the selecting official, however another candidate
> was selected. We appreciate your interest in employment with the U.S.
> Department of Education and wish you success in your future employment
> endeavors. Michelle Bowman Human Resources Specialist

*Id.*, Ex. 20, *see also id.*, Ex. 21. That same day, Plaintiff also received an e-mail from Bowman

regarding VA 0028 with the following message:

> Thank you for your interest in the position Equal Employment Opportunity
> Specialist GS-260-12, OM-2009-0028 with the U.S. Department of Education
> (ED). You were among the best qualified candidates referred to the selecting
> official, however another candidate was selected. We appreciate your interest in
> employment with the U.S. Department of Education and wish you success in your
> future employment endeavors. Nichelle Bowman Human Resources Specialist.

*Id.*, Ex. 22.

Plaintiff subsequently brought an administrative complaint alleging discrimination in his

non-selection for the Equal Employment Opportunity specialist position, and a hearing was

conducted before an Equal Employment Opportunity Commission administrative judge on

March 23, 2011, and May 17, 2011. *See generally* Bowman Test.; Vickers Test.; Ross Test. At the

hearing, Plaintiff had an opportunity to examine witnesses Bowman, Vickers, and Dr. Ross. *See generally id.* Plaintiff then filed this action on April 21, 2015. *See generally* Compl., ECF No. 1.

## II. LEGAL STANDARD

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction" and can adjudicate only those cases entrusted to them by the Constitution or an Act of Congress. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The Court begins with the presumption that it does not have subject matter jurisdiction over a case. *Id.* To survive a motion to dismiss pursuant to Rule 12(b)(1), a plaintiff bears the burden of establishing that the Court has subject matter jurisdiction over its claim. *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007). In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted). "At the motion to dismiss stage, counseled complaints, as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n,* 429 F.3d 1098, 1106 (D.C. Cir. 2005). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1)," the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.,* 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (citations omitted).

**B.  Motion for Summary Judgment**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact. *Id*. Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record – including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence – in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *See Ass'n of Flight Attendants-CWA, AFL-CIO v. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in his favor. *Liberty*

*Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

Importantly, "[w]hile summary judgment must be approached with special caution in discrimination cases, a plaintiff is not relieved of his obligation to support his allegations by affidavits or other competent evidence showing that there is a genuine issue for trial." *Morgan v. Fed. Home Loan Mortg. Corp.,* 172 F. Supp. 2d 98, 104 (D.D.C. 2001), *aff'd,* 328 F.3d 647 (D.C. Cir. 2003); *see also Marshall v. James,* 276 F. Supp. 2d 41, 47 (D.D.C. 2003) (special caution "does not eliminate the use of summary judgment in discrimination cases") (citing cases).

### III. DISCUSSION

The Court first turns to Defendant's motion to dismiss Plaintiff's tort claims for lack of subject matter jurisdiction. The Court then turns to the parties' cross-motions for summary

judgment regarding the discrimination claims under Title VII, the Rehabilitation Act, and the ADEA.[4]

## A.  Tort Claims

In the Complaint, Plaintiff asserts tort claims for Intentional Infliction of Emotional Distress (Count III) and Tortious Interference with Prospective Advantage (Count IV). Defendant moves to dismiss these claims for want of subject matter jurisdiction under Rule 12(b)(1) on the grounds that Plaintiff failed to exhaust his administrative remedies. The Court agrees with Defendant that these claims must be dismissed on that basis.

The Federal Tort Claims Act ("FTCA") "waives the United States's sovereign immunity from tort claims and, subject to exceptions, renders the United States liable in tort as if it were a private person." *Gross v. United States*, 771 F.3d 10, 12 (D.C. Cir. 2014), *cert. denied* 135 S. Ct. 1746 (2015). However, this waiver does not apply unless the claimant has exhausted administrative remedies, that is "unless the claimant shall have first presented the claim to the appropriate Federal agency" and *either* the claimant has obtained a written final denial of the claim *or* six months have elapsed since the claim was presented. 28 U.S.C. § 2675(a); *see also Emrit v. Nat'l Institutes of Health*, No. CV 14-2083 (BAH), 2016 WL 370705, at *2 (D.D.C. Jan. 29, 2016). The presentment requirement is jurisdictional. *Ali v. Rumsfeld*, 649 F.3d 762, 775

---

[4] The Court does not understand Plaintiff to be asserting a claim under 42 U.S.C. § 1981(a) despite the single reference to that statute in his Complaint, which lists section 1981 as a basis for jurisdiction. Compl. ¶ 2. In any event, such a claim would be unsuccessful because federal employees covered by Title VII, such as Plaintiff, may not pursue a discrimination claim under section 1981. *See Torre v. Barry*, 661 F.2d 1371, 1374 (D.C. Cir. 1981) ("[A] federal employee who is covered by [Title VII] may not sue under section 1981 or the Fifth Amendment.").

(D.C. Cir. 2011); *see also Magowan v. Lowery*, No. CV 15-917 (BAH), 2016 WL 778351, at *14

n.8 (D.D.C. Feb. 29, 2016).

Defendant argues that Plaintiff has failed to exhaust his administrative remedies because

he failed to file an administrative claim with the Department of Education. *See* Def.'s Mot. at 23

(citing Def.'s Mot., Ex. 23, Affidavit of Tracey Sasser). In response to the statement in

Defendant's Statement of Material Facts that Plaintiff did not exhaust his administrative

remedies with respect to his tort claims, Plaintiff states only the following:

> **Response:** Plaintiff will leave it to the Court to decide whether Plaintiff was
> required to file duplicative administrative complaints based on FTCA and the
> Rehabilitation Act, etc., based on the same elements. Defendant failed to cite the
> law which requires the Plaintiff to pursue a duplicative administrative claims [sic]
> of Rehabilitation Act, as amended; Age Discrimination in Employment Act, as
> amended, Civil Rights Act of 1964, "The Act", as amended, on the one hand, and
> in the order hand [sic], file the same charges under the Federal Tort Claims Act.
> Furthermore, Federal Tort Claims Act has not overruled the Rehabilitation Act as
> amended; Civil Rights Act, as amended, ADEA, as amended, Civil Rights Act of
> 1991, as amended, ADA, as amended.

Pl.'s Resp. to Def.'s Statement of Material Facts ("Pl.'s Resp. Facts"), ECF No. 25, ¶ 53. He

repeats the same limited argument in the portion of his memorandum of points and authorities

responding to Defendant's motion to dismiss. Pl.'s Reply at 52. In other words, Plaintiff admits

that he did not attempt to exhaust his administrative remedies with respect to the tort claims

separate and apart from his exhaustion of administrative remedies with respect to the

discrimination claims. Instead, he argues, without any reference to any legal authority, that the

exhaustion of administrative remedies with respect to his discrimination claims satisfies the

requirement to exhaust his tort claims. As a result of the plain language of the Federal Tort

Claims Act, the Court concludes that Plaintiff may not rely on the exhaustion of his

discrimination claims in order to satisfy the requirement of exhausting his tort claims.

Section 2675(a) provides that "[a]n action shall not be instituted upon a *claim* against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented *the claim* to the appropriate Federal agency." 28 U.S.C. § 2675(a) (emphasis added). In other words, the Federal Tort Claims Act explicitly requires "the claim"—the tort claim—that is being asserted against the government to be presented to the agency *prior* to bringing suit in federal court. In this case, Plaintiff admits that he never brought the tort claims to the agency directly through the channels established by the Department of Education for presenting tort claims. *See* Pl.'s Resp. Facts ¶ 53; *see also* 34 C.F.R. § 35.2(c) (delineating administrative process for presenting tort claims to the Department of Education). Moreover, Plaintiff never claims that he explicitly presented his *tort* claims through the administrative process through which he brought his discrimination claims; he only argues that he should not have to file a "duplicative administrative complaint." Pl.'s Reply at 52. Nor does he identify any material in the record to show that he, in fact, brought his tort claims to the attention of the agency through the administrative proceedings regarding his discrimination claims. Because it is Plaintiff's burden to establish the Court's subject matter jurisdiction over his claims, Plaintiff's failure to do so is fatal to his tort claims. *See Moms Against Mercury*, 483 F.3d at 828). In short, because Plaintiff neither presented his tort claims to the Department of Education through the channels prescribed by the agency nor presented those claims to the agency in any other manner, Plaintiff has failed

to exhaust his administrative remedies.[5] Therefore, the Court must dismiss his two torts claims—

Count III and Count IV—for lack of subject matter jurisdiction.[6]

## B.  Discrimination Claims

A single analytical framework applies to discrimination claims under the Rehabilitation

Act, under the Age Discrimination in Employment Act ("ADEA"), and under Title VII. *See*

*Baloch v. Kempthorne*, 550 F.3d 1191, 1197 n.2, 1200 (D.C. Cir. 2008) (same framework

applicable to Title VII and ADEA claims); *Kersey v. Washington Metro. Area Transit Auth.*, 586

F.3d 13, 17 (D.C. Cir. 2009) (same framework applicable to Rehabilitation Act Claims). Absent

direct evidence of discrimination, a plaintiff may prove discrimination under the burden-shifting

framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). *See*

*Brady v. Office of Sergeant at Arms,* 520 F.3d 490 (D.C. Cir. 2008).

Because Plaintiff proffers no direct evidence that Defendant discriminated against him on

the basis of disability, age, national origin, or gender, the Court proceeds to apply the *McDonnell*

*Douglas* burden-shifting framework. Pursuant to that framework, the plaintiff "must first

establish a *prima facie* case of prohibited discrimination. *Aka v. Washington Hosp. Ctr.*, 156 F.3d

1284, 1288 (D.C. Cir. 1998) (en banc) (citing *McDonnell Douglas*, 411 U.S. at 802). "Once [the

---

[5] Plaintiff also cryptically states in his reply that, "[i]f the Court finds that there is a law which requires that plaintiff should file a duplicative administrative complaint with Defendant, Plaintiff would file for leave to amend the particular section of the law complained off [sic]." Pl.'s Reply at 52. The Court is not at liberty "to amend" the law that requires administrative exhaustion as a jurisdictional requirement.

[6] In a single footnote, Defendant presents a cursory argument that the tort claims should also be dismissed because Title VII, the ADEA, and the Rehabilitation Act provide exclusive judicial remedies for the discrimination claims that fall under each of those acts, respectively. Because the Court dismisses the tort claims for want of subject matter jurisdiction, the Court does not reach this alternative argument.

plaintiff] has done so, the burden then shifts to the employer to articulate legitimate, nondiscriminatory reasons for the challenged employment decision." *Id.* In turn, once an employer has proffered a non-discriminatory reason, the *McDonnell Douglas* burden-shifting framework disappears, and the court must simply determine whether the plaintiff has put forward enough evidence to defeat the defendant's proffer of a legitimate, non-discriminatory reason and support a finding of discrimination. *See Brady,* 520 F.3d at 494. In other words, once a defendant has stated a legitimate, non-discriminatory reason for the adverse employment action, the question "becomes whether, based on the totality of the parties' evidence, a reasonable jury could determine that the defendant's proffered explanation was pretext for discrimination." *Kilby-Robb v. Duncan*, 77 F. Supp. 3d 164, 169 (D.D.C. 2015) (citing *Brady,* 520 F.3d at 494-95).

Defendant argues in its motion for summary judgment that the legitimate, non-discriminatory reason for hiring someone other than Plaintiff was that the person selected for the position was more qualified than Plaintiff for the position in question. *See* Def.'s Mot. at 8-10. Specifically, the selecting official testified that the agency was seeking to hire a person with "counseling experience, investigative experience in the Federal sector, and . . . experience talking policies and practices with senior officials within the Federal Government." Def.'s Mot., Ex. 18 ("Ross Test."), 105:10-14. Both the selecting official, Dr. Larry Ross, and Chandra Vickers, another agency official responsible for reviewing applications, testified that the selectee satisfied these qualifications but that Plaintiff did not. *Id.*, 106:21-107:5, 110:21-111:15, 112:119-114:12; Def.'s Mot., Ex. 16 ("Vickers Test."), 172:10-13,19-173:2,13-17, 178:17-180:16. Furthermore, the selecting official testified that, had he been presented with a recommendation to hire Plaintiff, he would not have done so because Plaintiff did not have the requisite federal Equal

16

Employment Opportunity counseling experience. Ross Test., 113:19-114:12. Indeed, the record

reveals that the selectee, Loza, had been working as an Equal Employment Opportunity

specialist at the United States Department of the Navy from 2006 through the time of the

selection process. Def.'s Mot., Ex. 17. Among other tasks involved in that position, Loza

performed EEO counseling. *Id.*, ROI at 324. By contrast, Plaintiff had not held a federal position

since September 2000, *id.*, Ex. 1.[7] Moreover, the record also shows that Plaintiff's previous

federal position was as an Equal Opportunity Assistant, Def.'s Mot., Ex. 1. His duties in that role

were to call other federal agencies and to request documents that had not been timely submitted

to the EEOC. Def.'s Mot., Ex. 2, March 23, 2011, EEOC Hearing Transcript – Testimony of

Ephraim Etokie ("Etokie Test.") at 47:13-48:15. That role also included the filing of documents.

*Id.* at 48:6-12. In testifying as to any other responsibilities under that job, Plaintiff did not

describe conducting any EEO counseling or investigations. *See id.* at 49:15-50:9. Plaintiff

himself testified that the role was "not impressive" and that it was temporary. *Id.* at 48:12, 50:6.

Moreover, Plaintiff last received training that may have been relevant to the vacant EEO

specialist position in 1994, *see* Etokie Test. 51:13-52:8; Def.'s Mot., Ex. 1 (Etokie Resume),

while the EEO counseling process changed after that training, in 1999, *see* Vickers Test. 228:13-

229:13. Based on an assessment of the comparative experience of the candidates, the selecting

official concluded that the ultimate selectee was more qualified and chose to hire her. *See* Def.'s

Mot. at 9-10 (citing record evidence). Based on this evidence, the Court concludes that

---

[7] Since his previous federal position, Plaintiff worked in private practice in what appears to be
personnel matters. *See* Defs.' Mot., Ex. 1.

Defendant has asserted a legitimate, non-discriminatory reason for choosing to hire an applicant other than Plaintiff.

Given that Defendant has stated a legitimate, non-discriminatory reason for the adverse employment action, the burden shifts back to Plaintiff to show that a reasonable jury could conclude, by a preponderance of the evidence, that Defendant's proffered non-discriminatory reason for hiring someone other than Plaintiff was pretext for underlying discrimination. Plaintiff attempts to satisfy this burden primarily through a series of criticisms of the hiring process and of the administrative process for handling Plaintiff's discrimination complaint, through a claim that the agency's explanations had shifted over time, through assertions regarding the system for scoring candidates and regarding the candidate's relative qualifications, and through a cursory claim regarding his disability status. The Court reviews, in turn, the several bases for Plaintiff's argument that the agency's proffered non-discriminatory reason for hiring another was pretext for underlying discrimination.

### a. Procedural Irregularities

Plaintiff identifies what he claims are several irregularities in the hiring process and in the administrative process for handling his discrimination complaint.[8] First, Plaintiff claims that, in the administrative process, Defendant filed a motion for summary judgment privately without sending a copy to Plaintiff. But Plaintiff cites no evidence in support of this proposition, either in

---

[8] The Court does not understand Plaintiff as asserting a fraud claim against the agency regarding the processing of his administrative complaint—separate and apart from the discrimination claims in this case. But insofar as he is purporting to assert such a claim, that claim fails as a matter of law. *See Koch v. White*, 967 F. Supp. 2d 326, 336 (D.D.C 2013) (citing *Smith v. Casellas*, 119 F. 3d 33, 34 (D.C. Cir. 1997)). Instead, Plaintiff's remedy is to sue the agency directly claiming discrimination in its hiring decision, just as he has done in this case.

his own affidavit, or elsewhere in the record. Nor can the Court locate any such evidence in the record.[9] Second, Plaintiff claims that he was unable to fully conduct discovery in the administrative process. With respect to this general claim, Plaintiff identifies no support in the record that Plaintiff was stymied from taking discovery. More specifically, Plaintiff claims that Vickers, a key Department of Education employee involved with the hiring process underlying this case, "disappeared" for several years and was unavailable for discovery. There is no evidence in the record supporting Plaintiff's claim that the agency or Vickers fraudulently claimed that she had left the agency for another federal position. In Plaintiff's Affidavit, he relies on outside evidence that shows that Vickers did testify that she had left the Department of Education for another agency. *See* Pl.'s Aff. ¶¶ 33-35 (citing evidence). But Plaintiff never identifies any evidence showing that these representations were *false or fraudulent*; nor would these statements be within his personal knowledge and, accordingly, properly contained within his affidavit, without citation to other evidence. In any event, it is notable that Vickers did participate in an oral hearing before the administrative judge, and Plaintiff had an opportunity to examine her. Accordingly, these assertions could not be the basis for the conclusion of any reasonable jury that Defendant's explanation of the hiring decision was pretext for underlying discrimination.

Next, Plaintiff argues that an agency official fraudulently communicated to him on March 12, 2009, that one of the positions for which he applied had been canceled. A review of the sequence of events on that day is helpful. As described above, at approximately 9:40 a.m., both

---

[9] Plaintiff's Exhibit Q shows that Plaintiff previously claimed that Defendant had not provided materials to him in print, but the exhibit does not itself show that Plaintiff had not received the motion for summary judgment.

Plaintiff and another applicant, Darrell Davis, received an email from Bowman, a human

resources specialist, indicating that VA 0024 (the vacancy announcement open to all applicants)

at the GS-12 level was canceled. Def.'s Mot., Ex. 19; *see also id.*, Ex. 21. An hour and a half

later, at approximately 11:08 a.m., Bowman sent a follow-up e-mail to both Plaintiff and to

Davis, which included the following message:

> Please disregard the previous email. See below. Thank you for your interest in the
> position Equal Employment Opportunity Specialist GS-260-11/12, OM-2009-
> 0024 with the U.S. Department of Education (ED). You were among the best
> qualified candidates referred to the selecting official, however another candidate
> was selected. We appreciate your interest in employment with the U.S.
> Department of Education and wish you success in your future employment
> endeavors. Nichelle Bowman[,] Human Resources Specialist

*Id.*, Ex. 20, *see also id.*, Ex. 21. That same day, Plaintiff also received an e-mail from Bowman

regarding VA 0028—the announcement only open to federal employees and certain other

categories of applicants—indicating that the position had been filled. *Id.*, Ex. 22. That e-mail also

stated that, "[y]ou were among the best qualified candidates referred to the selecting official,

however another candidate was selected." *Id.*, Ex. 22. Plaintiff argues that this exchange is

evidence of pretext. The Court agrees with Defendant that no reasonable jury could conclude that

this exchange—alone or together with other evidence in this case—reveals that discrimination

underlies the agency's decision. Notably, Plaintiff was not alone in receiving the 9:40 a.m.

email—another applicant received it as well. In addition, shortly after that e-mail was sent, a

corrected email was sent indicating that the position was filled by another applicant. No

reasonable jury could conclude that this exchange revealed evidence of underlying

discrimination, rather than a case of a mistaken message sent by an agency employee.

Plaintiff also emphasizes that the selecting official, Dr. Larry Ross, only interviewed a

single candidate—the one recommended by Vickers and the remainder of the hiring panel and

who was the person eventually hired. But Ross explained that he effectively delegated the hiring

process to Vickers and the reviewing panel and that, because the recommended candidate met the

qualifications, she was hired. Ross Test. at 108:7-22. Accordingly, this does not constitute an

irregularity that could be the basis for an inference of discrimination in the hiring process.

Next, Plaintiff claims that Vickers was prohibited by agency policy from reviewing the

qualifications of applicants on the referral certificate. For this claim, he relies entirely on a print-

out of a single question-and-answer from the agency's "Frequently Asked Questions" page

regarding ED HIRES. *See* Pl.'s Facts ¶ 18 (citing Pl.'s Mot., Ex. V). The question-and-answer in

that exhibit reads in its entirety:

> **Q40: If the system rates and ranks candidates, do I still need to designate a subject matter expert (SME) or rating/ranking panel for my vacancy?**
>
> A: No. The intent is for the system to relieve the *HR Specialist* from having to go through the manual process of determining basic qualification requirements and to eliminate the need for SMEs and rating/ranking panels to review applications. HR Specialists will consult up front with the manager or SME to determine the appropriate questions to be included in the vacancy. ED's e-Recruit System (EdHIRES), does not replace the need for subject matter input.

Pl.'s Mot., Ex. V (emphasis added). This question-and-answer plainly does not establish any

agency policy barring Vickers from reviewing candidate materials. First, it simply explains the

role of the ED HIRES system as it relates to the tasks of human resources specialists rather than

setting any policy, let alone any policy that forbids certain employees from reviewing candidate

materials. Second, it applies only to human resources specialists, which is the role that Bowman

played in this case. Vickers, by contrast, was the branch chief of the agency's Equal Employment

Opportunity Services office, who was to supervise the ultimate hire for the position. As

Defendant explains, Vickers was not reviewing the applicant's material in a human resources

capacity; rather, she was acting as a delegate of the selecting official, Dr. Ross. *See* Ross Aff.;

21

Vickers Test. at 167:3-6. In that role, it was necessary for her to review application materials of

the several candidates in order to determine whom to interview and whom to recommend to Dr.

Ross to hire. In other words, Plaintiff has identified no policy that would bar Vickers from

reviewing the candidates' application materials.

Plaintiff also claims that Defendant misapplied the "Rule of Three" by failing to

interview him. For this claim, Plaintiff relies on a statement in his own affidavit that, under the

Rule of Three, a candidate with the highest score on an employment examination is guaranteed

an interview. However, because Plaintiff has no basis for personal knowledge of the Rule of

Three, he may not rely on this conclusory statement to establish the meaning of the Rule of

Three. Moreover, as explained above, there is no evidence in the record to support the conclusion

that Plaintiff, in fact, received the highest score on the examination. Plaintiff also relies on a

statement from Robert Buggs, former Chief Human Capital Officer for the Department of

Education, that under this rule, if one candidate among the three referred to the selecting official

is interviewed, then all three must be interviewed. *See* Pl.'s Mot., Ex. L. However, this evidence

is not probative of the issue at hand because Buggs did not begin working at the agency until

November 2009, whereas the events in question occurred in March 2009. *See* Def.'s Mot., Ex. 26

("Buggs Test.") at 15:10. Moreover, it is undisputed that the officials involved with the hiring

process in this case, including Bowman, had a different understanding of the Rule of Three.

Bowman Test. at 67:11-18, 89:11-14. Specifically, they understood the Rule of Three to require

them to refer the top three candidates to the selecting official. *See id.* They further understood

that, if a selection was made from a DEU certificate, which is used under the competitive hiring

process, the selecting official was required to choose one of the top three candidates on such a

certificate and was required to choose a veteran over a non-veteran with a lower or equivalent

ED HIRES score. *See id.* But they did not understand the Rule of Three to require an interview of all individuals listed on a DEU certificate. *See id.* at 69:4-14. Instead, they understood the choice of whom to interview to be within the discretion of the selecting official. *See id.* at 99:19-21. As set out above, the actions of the agency's hiring officials were wholly consistent with this understanding of the Rule of Three. Because the agency's actions were consistent with its understanding of the relevant rule, the Court concludes that, even if that understanding was mistaken, no reasonable jury could determine that the agency's application of the Rule of Three was flawed in a way that would support an inference of discrimination in the hiring process.

In sum, based on the record, no reasonable jury could conclude that these purported irregularities—several of which have no basis in the record—could reveal that Defendant's non-discriminatory reason for the hiring decision was, in fact, pretext for underlying discrimination.

### b.  Shifting Explanations

Plaintiff also argues that the agency's explanation of the hiring decision shifted over time and that this shift shows that the agency's stated non-discriminatory reason is pretext for underlying discrimination. Relatedly, Plaintiff also argues that the agency's current explanation for the hiring decision is a post hoc rationale. Neither argument succeeds.

As explained above, Plaintiff applied for the open position under four separate announcements: under VA 0024, for GS-11 and for GS-12, and under VA 0028, for GS-11 and for GS-12. Separate certificates were prepared for each of these announcements. *See* ROI 181A, 182, 397-402. As explained above, for the two VA 0024 certificates, the three candidates with the highest adjusted ED HIRES scores were placed on the certificate. By contrast, with respect to the several categories of certificates prepared for VA 0028, all qualified candidates were listed on

each certificate. All of the individuals listed on the several certificates were referred to the selecting official for consideration.[10]

With this background, the Court turns to the agency's explanations that Plaintiff claims "shifted" over time. On February 4, 2009, Plaintiff received an e-mail from Bowman, the human resources specialist, stating that he was "well qualified" for the position, but "due to the number of applicants with higher scores, plaintiff was not among the list of candidates referred to the selecting official as 'best qualified.' " Pl.'s Aff. ¶ 4. It is apparent from the record that this e-mail pertains to the VA 0024 certificate for the GS-11 level. *See* AR 181A. With respect to this certificate, Plaintiff was not one of the top scoring candidates, and therefore he was not included on the certificate. *See id.* Several minutes after the first e-mail, Plaintiff received another e-mail from Bowman, this time regarding VA-0028 for the GS-12 level, indicating that Plaintiff was "rated among the best qualified candidates and ha[d] been referred to the selecting official." Pl.'s Mot., Ex. I. Specifically, Plaintiff was included on the Schedule A certificate that was referred to the selecting official, which included individuals with disabilities, as explained further above. AR 402. Because Plaintiff applied for the same position under separate announcements, the messages Plaintiff received—while perhaps confusing to a reader who did not observe references to different position numbers in the messages—were internally consistent. They do not show a shift over time; they simply show different outcomes with respect to the applications to multiple vacancy announcements to which Plaintiff applied. Therefore, no reasonable jury could conclude

---

[10] As explained above, the selecting official, Dr. Ross, delegated the review of candidates to Vickers and a panel of other agency officials. He interviewed only the candidate that the panel recommended, Loza, and chose to hire her.

that these messages constituted "shifting" explanations that would allow any inference of discrimination.

Next, Plaintiff relies on the series of e-mail messages that he received on March 12, 2009, discussed above. The Court explained above why that record would not allow a jury to conclude that those messages reveal underlying discrimination. That explanation is equally applicable with respect to Plaintiff's "shifting explanations" argument. No reasonable jury could conclude that the various messages sent on March 12, 2009, constitute substantive explanations that changed over time—rather revealing a simple clerical error in the use of the agency's human resources system—let alone a shift in explanations that could support an inference of discriminatory hiring. In short, with respect to all of the messages Plaintiff received from the agency, Plaintiff has not identified any evidence of shifting explanations that could serve as a basis of an inference for discrimination by a reasonable jury.[11]

In addition to claiming that the e-mails received by Plaintiff in February and March, 2009, show a series of shifting explanations, Plaintiff claims that the agency's current explanation for the hiring decisions is simply a post hoc rationale—i.e., that the agency arrived at this reasoning after having made the hiring decision. However, Plaintiff identifies no evidence

---

[11] As evidence of shifting explanations, Plaintiff also points to the statement in Defendant's motion for summary judgment at the administrative stage regarding the merit promotion certificate. Pl.'s Mot. at 19 (citing Pl.'s Mot., Ex. J). Notably, Plaintiff incorrectly paraphrases the cited exhibit. In that motion, the agency argued that "because Complainant did not apply for the position on the Merit Promotion certificate, the Agency was under no obligation to interview him." Pl.'s Mot., Ex. J. In other words, the agency indicates that, *if* Plaintiff were eligible for the Merit Promotion certificate and had chosen to apply under that certificate, the agency would have been obligated to interview him. However, it is undisputed that Plaintiff did not do so. In short, this explanation is simply another reason why the choice not to interview Plaintiff was not discriminatory; it is not a substitute for the other explanations offered. Therefore Plaintiff's claim that this is one among several shifting explanations fails.

that could support such a conclusion. None of the evidence regarding the administrative process, whether regarding the availability of evidence or witnesses during that process or otherwise, could support a conclusion that the agency's current explanation is a post hoc rationale. Rather, the evidence in the record to which the parties refer, including the testimony of Dr. Ross, of Vickers, and of Bowman, shows that the agency's current explanations regarding the hiring decision were those of the agency decisionmakers at the time of the internal investigation. *See* Vickers Test. at 172:8-13; 178:17-180:16; Ross Test. at 107:17-108:22, 114:3-12. Moreover, there is nothing to support a conclusion that the rationales presented during that investigation are not the contemporaneous rationales that motivated the hiring decision when it was made.

### c. ED HIRES Scores and Relative Qualifications of the Candidates

Plaintiff raises several issues regarding the automated ED HIRES scoring system that is used to attribute a numerical score to each application submitted and to identify which applicants should be listed on the VA 0024 certificates. Plaintiff argues that scores were fraudulently modified and that, because he claims to have received the highest score, the fact that he was not interviewed reveals discriminatory intent in hiring. The Court addresses each argument, in turn, and agrees with Defendant that neither of these arguments are successful.

To summarize the scoring process described above, the ED HIRES computer system automatically assigns a score to each application submitted based on the applicant's responses to certain questions. Veterans in certain categories may receive an additional bonus of 5 or 10 points. For each vacancy announcement under the competitive hiring process, including VA 0024 for GS-11 and for GS-12, the applicants with the top three scores for each announcement are listed on the DEU certificates for that announcements. As a result of this process, Plaintiff was

listed on the DEU certificate for VA 0024, under GS-12, which show his score as 100. AR 182.

Given that 100 is the highest score possible before any veteran's preferences are applied,

Bowman Test. at 82:5-83:10, and given that there is no evidence in the record that Plaintiff was a

veteran, Plaintiff received the highest score for which he was eligible. (This was not the highest

score of all of the applicants; other applicants who received veteran's preferences received

higher adjusted scores. *See* ROI at 181A; *see also id.* at 182.) However, Plaintiff argues that his

score was *actually* 259 and that it was fraudulently reduced to 100. Plaintiff's argument fails

because he can point to no record evidence that his score was *actually* 259. He never explains

how he arrives at that figure, and it is apparent that he has no personal knowledge concerning the

scoring methodology used by the automated computer system. It appears, as Defendant points

out, that Plaintiff simply added the point totals listed next to each question on his application

questionnaire to arrive at that total. *See* Pl.'s Aff. ¶ 22 (citing Pl.'s Mot. Ex. ("Pl.'s

Application")). However, Bowman, the human resources specialist, explains that the point values

for each question are weighted by the ED HIRES computer system in the process of calculating

the final score. *Id.* at 76:10-19, 81:14-19. Indeed, she explained that the scores are not derived by

simply adding together all points associated with all the questions. *See id.* She also confirmed

that the highest score possible, for those who do not receive a veteran's preference, was 100. *Id.*

at 82:5-83:10. Because Plaintiff has no personal knowledge of the scoring system and cannot

point to any evidence that his score was fraudulently manipulated, his argument regarding the

manipulation of his score fails.

Next, Plaintiff argues that, because he received what *he* claims is the highest score—259

points—the decision not to interview him shows that the agency's stated reason for the hiring

decision was pretext for underlying discrimination. Because the Court concludes that there is no

evidence in the record to support the conclusion that Plaintiff actually received a score of 259, rather than a score of 100, this argument fails at the outset. Therefore, any arguments based on the claim that Plaintiff received the highest score fail. Specifically, his score of 100 is lower than the score of two other individuals on the VA 0024 GS-12 certificate, including the person (Loza) who was ultimately hired. Therefore, the supposed differences the scores of the several applicants provides no support for an inference of discrimination.

Moreover, even had Plaintiff received the highest score through the ED HIRES system, that fact would not itself support an inference that the failure to interview or hire him was discriminatory. The agency has explained that the ED HIRES is used for a *preliminary* assessment of candidates but does not serve as a single metric that determines whom the agency will hire. *Cf. Fisher v. Univ. of Texas at Austin*, 136 S. Ct. 2198, 2213 (2016) ("Class rank is a single metric, and like any single metric, it will capture certain types of people and miss others.") Rather, after Plaintiff's application was scored by the automated system, Vickers reviewed Plaintiff's application materials and determined that he did not have the experience necessary for the position. *See* Vickers Test. at 178:17-18. In fact, insofar as Plaintiff claims that he was more qualified than the Loza, who was ultimately selected, the record readily shows the opposite. Both Vickers and Dr. Ross emphasized the importance of recent federal experience doing equal employment counseling in the selection process. But Plaintiff's most recent federal experience was as an Equal Employment Assistant from 1998 to 2000, approximately 9 years before the selection process was ongoing. *See* ROI at 122. And he did not have any experience in equal employment counseling as an employee of the federal government. Ross Test. at 114:3-12. By contrast, the selectee, Loza, had been working at the Department of Navy as an Equal Employment Opportunity specialist from 2006 through the time of her application, which

included EEO counseling work. *See* Def.'s Mot., Ex. 17. Based on this discrepancy in skills, the agency chose to interview and ultimately hire Loza, while Plaintiff did not receive an interview. *See* Def.'s Mot. at 9-10 (citing record evidence). Accordingly, this outcome cannot serve as the basis for an inference of discrimination.

As part of his argument that the hiring decision was discriminatory, Plaintiff also challenges various aspects of the credentials of Loza, the candidate who was ultimately hired. None of his assertions have merit. First, Plaintiff asserts that Loza was not actually a veteran because he never received from the agency certain forms attesting to Loza's veteran status. Defendant explains that sharing those forms with Plaintiff would constitute a violation of the selectee's privacy rights under the Privacy Act. *See* Def.'s Reply at 5 (citing 5 U.S.C. § 522a). In addition, Defendant points to evidence in the record that Loza was a veteran, *see* Bowman Test. at 88:3-11, while Plaintiff does not point to any evidence in the record indicating that Loza was *not* a veteran. Moreover, Defendant explains that Loza was not chosen *because* of her veteran's status. Vickers Test. at 182:16-18. Plaintiff also claims that Loza manipulated her resume simply to meet the requirements of the job postings at issue. But he identifies no evidence to support this audacious claim. Rather, Defendant explains that any apparent similarities between Loza's resume and the required qualifications of the job posting likely stem from the fact that Loza was then serving in a similar capacity in another agency—which supports Defendant's conclusion that she was well-prepared for the advertised job. For these reasons, Plaintiff's arguments regarding the selectee's qualifications fail as well.

In short, with respect to the Plaintiff's claim regarding the ED HIRES scores and regarding the relative qualifications of the candidates, the Court concludes none of the factors that Plaintiff identifies could support an interference of discrimination in the hiring decisions.

### d. Plaintiff's Disability Status

Finally, Plaintiff makes a conclusory claim that the agency's motivation for not hiring him was to avoid accommodating his disability, deafness. *See* Pl.'s Opp'n at 52. Specifically, he identifies a device that he could use to facilitate his work at the agency. *See id.* at 49. However, Plaintiff points to no material in the record so much as hinting that the agency chose not to hire him in order to avoid accommodating his disability. Nor is there any indication in the record that Plaintiff requested or required an accommodation in order to fill out the application for the job vacancy. Rather, it is clear from the record that he filled out the application, see Def.'s Mot., Ex. 1, and was considered by the agency based on the merits of the information he submitted regarding his qualifications. Moreover, insofar as this argument simply provides a theory as to *why* the agency might have discriminated against Plaintiff, this conclusory assertion does not provide any basis for a reasonable jury to conclude that the agency's stated reason for its hiring decision was pretext for underlying discrimination on the basis of disability or otherwise.

*     *     *

In sum, Plaintiff has not "produced sufficient evidence for a reasonable jury to find that ... the employer intentionally discriminated against [him] on the basis of" disability, national origin, age, or sex. *Brady*, 520 F.3d at 494. Plaintiff has not provided direct evidence of discrimination by Defendant. Nor has he provided evidence that would allow a reasonable jury to conclude that the legitimate, non-discriminatory reason asserted by Defendant for failing to hire Plaintiff— Defendant's conclusion that the selectee was better qualified for the job than Plaintiff for the various reasons presented above—was pretext for discrimination. The Court concludes that none of the purported bases for Plaintiff's discrimination claims—standing on their own or taken altogether as a whole—could support an inference of discrimination in the hiring process.

Accordingly, with respect to all of the discrimination claims in this case, the Court grants Defendant's Motion for Summary Judgment. Concomitantly, because no reasonable jury could conclude, based on the current record, that Defendant's proffered explanation was pretext for underlying discrimination, the Court, too, cannot come to that conclusion as a matter of law. Therefore, the Court denies Plaintiff's motion for summary judgment.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's [19] Cross-Motion to Dismiss and for Summary Judgment and DENIES Plaintiff's [14] Motion for Summary Judgment. The Court DISMISSES the tort claims in this case for lack of subject matter jurisdiction and, with respect to the discrimination claims, GRANTS summary judgment to Defendant in full. The Court concludes that Plaintiff has not presented evidence from which a reasonable jury could infer discrimination, let alone undisputed facts that would merit granting summary judgment to Plaintiff on this record. This case is dismissed in its entirety.

An appropriate Order accompanies this Memorandum Opinion.

Dated: July 29, 2016

                                        /s/
                                        COLLEEN KOLLAR-KOTELLY
                                        United States District Judge